UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                                                            :   15 Cr. 179 (PAC)
         -against-                                          :
                                                            :
MICHAEL HENRY,                                              :   **OPINION & ORDER**
                                                            :
                            *Defendant.*                    :
                                                            :
                                                            :
------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendant Michael Henry is charged in a three-count indictment with narcotics possession with intent to distribute in violation of 21 U.S.C. § 841(b)(1)(C); firearm possession in connection with a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i); and felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Henry moves to suppress narcotics and a firearm seized in connection with his arrest, as well as statements he made when he was arrested inside a store and after arriving at the police precinct. The Court DENIES the motion to suppress the narcotics, the firearm, and the statement made at the time of arrest; but GRANTS the motion to suppress the statement made at the precinct.

## SUMMARY OF FACTS[1]

In the early morning hours of March 1, 2015, NYPD Officer Israel Alcantara was driving a police van along Courtlandt Avenue in the Bronx. Transcript of Suppression Hearing ("Tr."),

---

[1] The following facts are taken from the testimony of Officer Israel Alcantara and Sergeant Rogelio Pagan at the September 29, 2015 suppression hearing, surveillance video and photos which were received in evidence, and the Defendant's affidavit, submitted on May 28, 2015.

1

Dkt. 28 at 9. Also in the van were Officers Chanhyuk Park and Kevin Pamphile. Tr. 7. Alcantara had patrolled the area for a year and a half, and knew it to be a "[v]ery high" crime area. Tr. 8. After stopping at a red light at the corner of Courtlandt Avenue and 152nd Street, Alcantara observed Henry standing just inside the door of a small grocery store on the corner. Tr. 10; Def. Aff., Dkt. 22 at ¶ 2. Henry was standing next to a woman, and Alcantara observed him "counting a small object or counting or separating a small object," but could not discern what the object was. Tr. 10, 28-29.

Alcantara exited the van and walked toward the door of the store. Tr. 14. As soon as Henry saw Alcantara approaching the store, Henry began walking toward the back of the store. Tr. 14; Def. Aff. ¶ 3. Alcantara entered the store and ordered Henry to stop and show his hands. Tr. 15, 21, 45; Def. Aff. ¶ 4. But Henry did not comply; instead he continued walking and entered a small, unlit storage area in the back of the store.[2] Tr. 15, 46. Alcantara followed Henry into the storage room, and again ordered Henry to show his hands. Tr. 15. Henry responded that he was "just grabbing a soda officer," even though surveillance photos show a well-stocked refrigerator immediately before the entrance to the darkened storage room. Tr. 15; Ex. 5. Henry did not show his hands; instead Alcantara observed Henry stuffing something inside a glove. Tr. 15, 16, 22, 48. Alcantara then grabbed Henry by his jacket collar and Henry fell to the ground. Tr. 16, 48. As Alcantara tried to pick Henry up, he saw Henry throw the

---

[2] Henry asserts that upon hearing Alcantara's order to stop and show his hands, he "turn[ed] around and put [his] hands in the air as though [he] was under arrest." Def. Aff. ¶ 4. Further, Henry argues that he did not "ignore" Alcantara's order to stop since he was already in the back of the store as Alcantara entered the store. See Def. Post-Hearing Rep. Mem., Dkt. 34 at 4. The Court finds those statements false. Instead, the Court credits Alcantara's testimony. *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012) ("It is within the province of the district court as the trier of fact to decide whose testimony should be credited"). Alcantara's testimony is confirmed by the surveillance video, which shows that when Alcantara entered the store, Henry continued walking toward the back of the store and did not turn around or put his hands in the air. See Ex. 13, CH 2, CH 3 at 02:26:49-52.

glove into a cardboard box in the storage room. Tr. 16, 22. Officer Pamphile then entered the storage room, grabbed Henry, and removed him from the storage room. Tr. 16, 48. Alcantara picked up the glove and looked inside, finding small baggies containing what he believed to be crack cocaine. Tr. 16-17, 50. Alcantara showed the baggies to Henry and said: "This is a soda you were getting?" Tr. 16. Henry responded: "[O]h, that's for my personal use officer." Tr. 16, 23; Def. Aff. ¶ 6. The officers then handcuffed Henry and removed him from the store. Tr. 23. At the suppression hearing, Alcantara could not remember whether he frisked Henry during the arrest; the arrest report he prepared indicates that he did not.[3] Tr. 52-53. After a brief struggle outside the store in which Henry fell to the ground and kicked, the officers put him into the police van. Tr. 25.

When they arrived at the precinct, the officers removed Henry from the van. Tr. 25-26. Officer Pamphile and Sergeant Pagan led Henry toward the precinct, each holding one of Henry's arms. Tr. 67. As they were walking, Alcantara shined a flashlight into the van and saw a firearm under the seat that Henry had been sitting in. Tr. 26. Alcantara yelled: "Gun, sarge, there's a gun." Tr. 68. Pagan was "shocked and pissed off," and screamed at Henry: "You fucking dropped a gun in my car?" Tr. 68-69, 88-89; Def. Aff. ¶ 7. Henry then dropped to the ground and Pagan fell on top of him. Tr. 69. As they were falling, Alcantara heard Henry say something to the effect of "yes, I put it in there"; Pagan heard Henry say something, but did not hear what it was. Tr. 26, 69; Def. Aff. ¶ 7.

## DISCUSSION

"On a motion to suppress evidence in a criminal trial, once [the defendant] has established a basis for his motion, the burden rests on the Government to prove, by a

---

[3] The surveillance video with the clearest view of this interaction skips from 2:28:01 to 2:28:50. Ex. 13, CH 3.

3

preponderance of the evidence, the legality of the actions of its officers." *United States v. Echevarria*, 692 F. Supp. 2d 322, 332 (S.D.N.Y. 2010).

## I. Suppression of Physical Evidence

### A. Legal Standards

The Fourth Amendment protects against "unreasonable searches and seizures." "A seizure occurs when (1) a person obeys a police officer's order to stop or (2) a person that does not submit to an officer's show of authority is physically restrained." *United States v. Simmons*, 560 F.3d 98, 105 (2d Cir. 2009). A seizure requires physical force or, "where that is absent, *submission* to the assertion of authority [by the police officer]." *California v. Hodari D.*, 499 U.S. 621, 626 (1991).

An investigatory *Terry* stop begins "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). A *Terry* stop is lawful only if supported by "reasonable suspicion," which requires "specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers with a particularized and objective basis for suspecting wrongdoing." *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014) (internal quotation marks omitted). But the grounds for the stop need not exist until the suspect is seized. *Simmons*, 560 F.3d at 107. Where the suspect does not comply with an officer's show of authority and so is not seized, subsequent pre-seizure behavior can generate reasonable suspicion for a lawful stop, even if the initial show of authority was unreasonable. *United States v. Swindle*, 407 F.3d 562, 568 (2d Cir. 2005).

The Fourth Amendment prohibits warrantless searches of containers that "can support a reasonable expectation of privacy." *United States v. Jacobsen*, 466 U.S. 109, 120 n.17 (1984).

4

"When a person voluntarily abandons property, however, he forfeits any reasonable expectation of privacy that he might have had in the property." *United States v. Lee*, 916 F.2d 814, 818 (2d Cir. 1990). The court must "focus on the intent of the person who is purported to have abandoned the property." *Id.* Conduct that typically supports a finding of abandonment includes "throwing or discarding property, running away from property, or disclaiming ownership after direct police questioning." *United States v. Jackson*, No. 10 cr 783 (NRB), 2011 WL 1431983, at *13 n.16 (S.D.N.Y. Apr. 12, 2011). "When a defendant flees from the police and drops an item in the course of his pursuit by the police, it is typically deemed abandoned." *United States v. Aquino*, No. 09 cr 555 (HB), 2009 WL 3208877, at *4 (S.D.N.Y. Oct. 7, 2009).

### B. Application

Henry argues that suppression of the seized narcotics is proper because the officers lacked reasonable suspicion to stop and seize him, and then unlawfully searched his glove. That argument is rejected.

As an initial matter, Henry was not seized until Alcantara grabbed the collar of Henry's jacket in the storage room. A seizure had not occurred previously because Henry did not obey Alcantara's order to stop and show his hands; instead he continued to walk and did not show his hands. *Simmons*, 560 F.3d at 105. When Alcantara stopped and seized Henry in the storage room, he had reasonable suspicion to do so. Alcantara had observed Henry, in a known high crime area, standing next to a woman counting or separating a small object or objects[4] (Tr. 8, 10); Henry then ignored Alcantara's order to stop and show his hands and instead walked away from the officer towards a small, darkened storage room (Tr. 15); in the storage room Henry continued to ignore the order to show his hands and Alcantara observed him stuffing something

---

[4] The surveillance photos confirm that Henry and the woman were engaging in a monetary transaction. Ex. 11.

into a glove (Tr. 15-16). Given the totality of the circumstances, Alcantara had reasonable suspicion to believe that Henry was engaged in narcotics possession or distribution. *See United States v. Herring*, 373 Fed. Appx. 131, 133 (2d Cir. 2010); *United States v. Magda*, 547 F.2d 756, 758-59 (2d Cir. 1976). The stop and seizure were lawful.

Alcantara lawfully searched the glove since Henry abandoned it when he threw it into a cardboard box. Several facts support a finding that Henry intended to abandon the glove. As Henry acknowledges, he began walking away from the door and toward the darkened storage room when he saw Alcantara approaching the store. Def. Aff. ¶ 3. He then ignored Alcantara's order to stop, stuffed something (presumably the narcotics) inside the glove, and threw the glove into a cardboard box. These facts, taken in their totality, support a finding of abandonment by a preponderance of the evidence. *See Aquino*, 2009 WL 3208877, at *4. The Government has met its burden and Defendant's motion to suppress the narcotics is denied.

Henry seeks to suppress the firearm as fruits of an unlawful stop and search. *See* Def. Post-Hearing Mem., Dkt. 31 at 2, 16-17 (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)). Since the stop and search were lawful, Defendant's motion to suppress the firearm is denied.

## II.  Suppression of Statements

### A. Legal Standard

The *Miranda* warnings must be given before an individual is subjected to "custodial interrogation." *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). The court considers the totality of the circumstances in "assessing whether the police 'should have known'

that their actions 'were reasonably likely to elicit an incriminating response.'" *Acosta v. Artuz*, 575 F.3d 177, 191 (2d Cir. 2009) (quoting *Innis*, 446 U.S. at 303)). The Second Circuit has rejected a categorical rule that any statement by the police regarding the nature and strength of inculpatory evidence or any display of such evidence to the suspect constitutes interrogation as a matter of law. *United States v. Stroman*, 420 Fed. Appx. 100, 102 (2d Cir. 2011). Rather, the analysis is highly contextual and requires consideration of the totality of the circumstances.

### B. Application

The Government concedes that Henry was in custody and had not received *Miranda* warnings in the store when he stated: "[O]h, that's for my personal use officer." The only issue, then, is whether that statement was made in response to interrogation. Based on the totality of the circumstances, the Court holds that it was not. The statement was preceded by Henry's statement that he was "just grabbing a soda officer," but still not complying with Alcantara's command. At that point Alcantara seized Henry and Henry tossed a glove into a box in the storage room. Tr. 15-16. After passing Henry over to his partner Pamphele, Alcantara examined the contents of the glove, which he determined to be narcotics. Tr. 16-17. Alcantara then showed Henry the narcotics and asked: "[T]his is a soda that you were getting?" Tr. 16. Alcantara's statement was clearly sarcastic and rhetorical, as it was obvious that the small baggies were not a soda. As such, Alcantara's statement was not reasonably likely to elicit an incriminating response, and certainly not Henry's response as it did not logically answer Alcantara's question. *See Cortez v. Perez*, No. 11 cv 3545 (FB), 2014 WL 2573342, at *2 (E.D.N.Y. June 7, 2014) (holding that officer's "rhetorical, somewhat sarcastic" statement to defendant did not constitute interrogation). Defendant's motion to suppress the statement made in the store at the time of arrest is denied.

7

The Government likewise concedes that Henry was in custody and had not received *Miranda* warnings outside the precinct when he made a statement to the effect that the recovered firearm belonged to him. The Government argues however that Pagan's preceding statement ("[Y]ou fucking dropped a gun in my car?") was not interrogation because it was a rhetorical question or declaratory statement not reasonably likely to elicit an incriminating response. The Court disagrees. Pagan's statement, which he yelled at Henry while holding Henry's arm, was made immediately after Alcantara discovered the firearm and yelled, "Gun, sarge, there's a gun." Tr. 68-69, 88-89. At that time, the origin of the firearm was unknown or at least unclear, as several officers (including Pagan) had physically handled Henry while putting him into the police van, and none had found a firearm. Tr. 61, 79-80. Under those circumstances, Pagan's statement constituted an express question that he should have known was reasonably likely to elicit an incriminating response as to whether the firearm belonged to Henry. Defendant's motion to suppress the statement made at the precinct is granted.

## CONCLUSION

The Court DENIES the motion to suppress the seized narcotics and firearm; DENIES the motion to suppress the statement made at the time of arrest; and GRANTS the motion to suppress the statement made at the precinct. The Clerk is directed to terminate the motion at Docket 19.

The Court excludes time between the date of this opinion and a conference scheduled for Tuesday, December 22, 2015, at 11:45 am, in Courtroom 14C, under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A). Allowing the parties time to consider how to proceed next in light of this opinion is in the interests of justice, and outweighs the interests of the public and Defendants in a speedy trial.

Dated: New York, New York
December 2, 2015

SO ORDERED

*Paul A. Crotty* (signature)

PAUL A. CROTTY
United States District Judge